UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BRADLEY MCNEALY                                                                                    PLAINTIFF
ADC #112200

V.                                  No. 4:22-CV-01221-LPR-BBM

MCFADDEN, Officer, Pulaski County
Regional Detention Facility, *et al.*                                                          DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Rudofsky may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I.   INTRODUCTION

On December 8, 2022, Plaintiff Bradley McNealy filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while he was in custody at the Pulaski County Regional Detention Facility ("PCRDF"). (Doc. 2). The Court conducted an initial screening of McNealy's Complaint pursuant to the Prison Litigation

Reform Act ("PLRA") and noted several deficiencies.[1] (Doc. 7). McNealy was given leave to file an Amended Complaint to address those deficiencies, but he failed to do so. Accordingly, the Court will proceed with screening.

## II.   ALLEGATIONS

McNealy alleges that, while he was incarcerated in PCRDF, shift officers were often required to supervise single-handedly two units at a time. (Doc. 2 at 7–12). When this occurred, the door between the two units was left open, and all 168 inmates in those units were required to remain in their cells with the doors locked. *Id.* Because this happened on such a frequent basis, the inmates were sometimes locked in their cells for days at a time without access to "rec. time, showers, mail, phones, cleaning [supplies], [the] law library, tablets, or kiosks." *Id.* at 8.

More specifically, McNealy alleges that, from April 4 to November 18, 2022, he was locked in his cell for a total of fifty-four days by sixteen different shift officers. *Id.* at 7–12. The longest lockdown lasted seven days—from September 22 to 28, 2022. *Id.* at 7–13. But, even on the days when he was allowed out of his cell, PCRDF had such a dearth of working phones and kiosks that he was still not able to make calls to his lawyer or access the law library. *Id.* at 8.

McNealy believes that, because of these conditions, he was not able to research adequately his pending criminal case and correspond with his defense attorney. *Id.* at 12.

---

[1] The Prison Litigation Reform Act requires federal courts to screen prisoner complaints and to dismiss any claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(a) & (b).

Consequently, he was only able to communicate with his attorney at the courthouse where, he alleges, all his attorney wanted to do was "waive his rights," continue court dates, or try to convince him to accept the prosecutor's plea agreement. *Id.* Without access to the law library, McNealy was not able to research whether the plea agreement he ultimately accepted was "fair."[2] *Id.* Instead, he had to "take the word" of his defense attorney. *Id.*

Finally, McNealy alleges that "they" confiscated paper letters from the inmates because of a "drug problem" in the detention facility. *Id.* As a result, McNealy "lost contact" with his family. *Id.*

McNealy brings claims for "punishment" of pretrial detainees and "indifference" to conditions, which the Court liberally construes as Fourteenth Amendment and Eighth Amendment conditions-of-confinement claims. *Id.* at 8, 13. McNealy's allegations can also fairly be read to assert First Amendment claims for denial of access to courts and right to association with family. McNealy sues Defendants in their official and individual capacities. *Id.* at 2. He seeks monetary damages and injunctive relief. *Id.* at 14.

### III.   DISCUSSION

To survive § 1915A screening, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 8(d) (stating allegations must be "simple,

---

[2] The Court takes judicial notice of McNealy's state court proceedings, which are publicly available on the Arkansas State Judiciary's website, caseinfo.arcourts.gov. *See* Sentencing Order, *State v. Bradley McNealy*, No. 69CR-20-5, Circuit Court of Stone County, Arkansas, Oct. 6, 2022; Sentencing Order, *State v. Bradley T. McNealy*, No. 2022-0034, Circuit Court of Pulaski County, Arkansas, Oct. 4, 2022; Sentencing Order, *State v. Bradley T. McNealy*, No. 2022-1476, Circuit Court of Pulaski County, Arkansas, Oct. 19, 2022 (last accessed Dec. 28, 2023).

concise, and direct"). "[L]abels and conclusions," a "formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient to plead a plausible claim. *Iqbal*, 556 U.S. at 678. Finally, a prisoner's § 1983 complaint must allege facts sufficient to show how each defendant was personally involved in the alleged constitutional wrongdoing. *Id*. at 676.

### A.     Fourteenth Amendment Conditions of Confinement Claim

Because McNealy was a pretrial detainee prior to his convictions in the Circuit Courts of Pulaski County and Stone County, Arkansas, in September and October, 2022, his conditions-of-confinement allegations from April to October 2022 are analyzed under the Fourteenth Amendment's due process clause. *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)). To state a viable due-process claim, McNealy must allege facts showing that the conditions of his confinement "rise to the level of punishment." *Id.* "Absent a showing of an expressed intent to punish," McNealy must allege facts suggesting that the conditions are "arbitrary or purposeless," i.e., that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. *Bell*, 411 U.S. at 538–39; *Stearns*, 957 F.3d at 907. The Court must look at the "totality of circumstances of [] confinement and not any particular condition in isolation." *Id.* at 909.

Although McNealy alleges that the conditions he was subject to "equal out to be punishment for pretrial detainees" (Doc. 2 at 13), he does not state any *facts* to support his conclusion. Put another way, there are no facts in the Complaint suggesting that the temporary lockdowns were expressly imposed to punish McNealy or that the conditions

4

were "arbitrary or purposeless." *Bell*, 411 U.S. at 539. To the contrary, it can reasonably be inferred from the allegations in the Complaint that the lockdowns were imposed so a single officer could safely monitor 168 inmates across two units. Additionally, McNealy admits that the restriction on letters was imposed due to a "drug problem" in the detention facility. (Doc. 2 at 12).

Because McNealy has not alleged that his conditions of confinement from April to October 2022 were imposed as punishment or that those conditions were arbitrary or purposeless, he fails to state a plausible Fourteenth Amendment due process claim.

### B. Eighth Amendment Conditions of Confinement Claim

Unlike a pretrial detainee, "an inmate who has been convicted and sentenced may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Stearns*, 957 F.3d at 906. Accordingly, for any conditions of confinement occurring after McNealy began serving a prison sentence, McNealy's allegations must meet a higher Eighth Amendment deliberate-indifference standard to state a viable claim.

The "Constitution does not mandate comfortable prisons" or that prisons be "free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Thus, to plead a viable Eighth Amendment conditions-of-confinement claim, McNealy must allege facts demonstrating that: (1) objectively, he suffered an "extreme deprivation" that was "sufficiently serious" enough to deny him "the minimal civilized measure of life's necessities," or to pose "a substantial risk of serious harm" to his health or safety; and (2) subjectively, the Defendants were deliberately indifferent to the risk of harm posed by the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

McNealy's post-conviction allegations, which include a maximum lockdown of four days caused by the staffing shortages discussed above, fall far short of that standard. Namely, he has not alleged any "*extreme* deprivation" or "*substantial* risk of *serious* harm." *Id.* (emphases added). Furthermore, conditions far more onerous than McNealy's have been found to not violate the Eighth Amendment. *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 83–84 (8th Cir.1996) (holding several days without underwear, blankets, mattress, exercise or visits did not violate Eighth Amendment); *Williams v. Delo*, 49 F.3d 442, 444 (8th Cir.1995) (holding four days without clothes, mattress, water, bedding, legal mail or hygienic supplies did not violate Eighth Amendment).

Because McNealy's allegations of post-conviction intermittent lockdowns do not constitute an extreme deprivation of life's necessities or a serious risk of harm, he fails to state a plausible Eighth Amendment cruel-and-unusual punishment claim.

### C. First Amendment Access to Courts Claim

McNealy asserts that he was denied access to the law library and his attorney, which the Court interprets as an access-to-courts claim. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977) ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.") (abrogated on other grounds by *Lewis v. Casey*, 518 U.S. 343 (1996)). An inmate's right to access the courts encompasses their right "to attack their sentences" or "challenge the conditions of their confinement." *Casey*, 518 U.S. at 355; *Johnson v. Avery*, 393 U.S. 483, 489–90 (1969). However, to proceed on an access-to-courts claim, an inmate

must allege facts showing that he was "actually injured" in connection with a "nonfrivolous and arguably meritorious underlying legal claim." *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) (citing *Christopher v. Harbury*, 536 U.S. 403, 413 (2002)). In this respect, "actual injury" means "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Casey*, 518 U.S. at 355; *see also Klinger v. Dept. of Corr.*, 107 F.3d 609, 617 (8th Cir. 1997). The injury may not be speculative or anticipatory. *See Harbury,* 536 U.S. at 416 (the "arguably meritorious" nature of a claim must be "more than hope").

At most, McNealy alleges dissatisfaction with his defense counsel and an inability to "check" counsel's legal advice. He has not alleged that he missed a court deadline, was unable to present a claim, or was "actually injured" in any way. Resultantly, because McNealy did not allege actual injury, he fails to state a plausible First Amendment access-to-courts claim.[3]

### D. Right to Association Claim

Turning to McNealy's final claim regarding loss of contact with his family, McNealy does not allege that any particular Defendant was personally involved in denying him access to letters from his family. Thus, he does not state an individual-capacity right-to-association claim against any Defendant. *See Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (holding that, to establish personal liability in a § 1983 action, plaintiff must

---

[3] Moreover, to the extent McNealy attempts to attack the validity of his guilty plea, and, thus, his underlying criminal conviction, that claim is *Heck*-barred. *See Heck v. Humphrey*, 512 U.S. 477, 487–88 (1994). And his only federal recourse is a habeas corpus action. *See Preiser v. Rodriguez*, 411 U.S. 475 (1973).

Case 4:22-cv-01221-LPR   Document 11   Filed 01/02/24   Page 8 of 10

allege specific facts of personal involvement in, or direct responsibility for, a deprivation of the plaintiff's constitutional rights). To the extent McNealy seeks to bring an official-capacity claim against the County for implementing an official policy or unofficial custom of denying inmates communication with their families, his allegations fail to rise to the level of a constitutional violation. *See Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir. 1999) (discussing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)).

The Supreme Court and the Eighth Circuit have recognized a *limited* right for prisoners and pretrial detainees to associate with their families. *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003); *Manning v. Ryan*, 13 F.4th 705, 708 (8th Cir. 2021). However, "freedom of association is among the rights least compatible with incarceration…[and] [s]ome curtailment of that freedom must be expected in the prison context." *Bazzetta*, 539 U.S. at 131. Additionally, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Id.* at 132.

In *Bazzetta*, the Supreme Court noted that limitations on familial *visitation* privileges for prisoners may be unconstitutional if imposed permanently or "in an arbitrary manner to a particular inmate." 539 U.S. at 137. However, limitations on visitation privileges do *not* violate the Constitution if imposed "for a limited period as a regular means of effecting prison discipline." *Id.*

In *Manning*, the Eighth Circuit expanded the *Bazzetta* rule to pretrial detainees. *Manning,* 13 F.4th at 708. There, the court held that "officials who permanently or

8

arbitrarily deny an inmate visits with family members . . . have acted in violation of the Constitution." *Id.*

It follows that, in this case, a limitation on familial *mail* privileges may be unconstitutional if applied arbitrarily to McNealy—which has not been alleged. But any such limitation would not be unconstitutional if imposed "for a limited period as a regular means of effecting prison discipline." *Bazzetta,* 539 U.S. at 137.

As previously discussed, McNealy admits that the restriction on letters was imposed due to a "drug problem" in the detention facility. (Doc. 2 at 12). Thus, according to McNealy's Complaint, any restriction on mail was imposed in response to that ongoing drug problem, and the court must give substantial deference to the PCRDF officials to address appropriately that issue. *Bazzetta,* 539 U.S. at 132, 137.

Because McNealy did not allege that the limitation on familial mail was imposed arbitrarily to him, and McNealy essentially acknowledges that the limitation was imposed "as a means to effect[] prison discipline," McNealy fails to state a plausible First Amendment right-of-association claim.

## IV. CONCLUSION

McNealy's Complaint fails to state any plausible constitutional claims, and McNealy did not file an amended complaint to correct those deficiencies when given the opportunity (Doc. 7).

IT IS THEREFORE RECOMMENDED THAT:

1. McNealy's Complaint (Doc. 2) be DISMISSED, without prejudice, for failure to state a claim upon which relief may be granted.

    2.    The Court RECOMMEND that the dismissal count as a "strike" for the purposes of the Prison Litigation Reform Act. 28 U.S.C. § 1915(g).

    3.    The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

DATED this 2nd day of January, 2024.

*Benecia Moore*
_____
UNITED STATES MAGISTRATE JUDGE